A06A2254. FIELDS v. THE STATE.
(641 SE2d 218)

ELLINGTON, Judge.

A Coweta County jury found Clarence Edward Fields guilty beyond a reasonable doubt of attempted armed robbery, OCGA §§ 16-8-41 and 16-4-1.[1] The trial court denied Fields' motion for new trial, and Fields appeals, contending the court erred in refusing to sever the counts for trial and that it improperly admitted hearsay evidence. Finding no error, we affirm.

The evidence, viewed in favor of the jury's verdict,[2] showed that, on the afternoon of May 13, 2005, the manager of a Dunkin' Donuts shop in Coweta County was making donuts when an employee of a Subway sandwich shop next door suddenly ran into his store. The Subway employee was "hysterical," crying, and shaking, and she said that she had just been robbed. The Dunkin' Donuts manager called 911 and, as the Subway employee told him what had happened, he relayed the information to the 911 operator. The Subway employee said that the robber had a gun and was wearing a blue shirt and that he grabbed her before she fled. A police officer arrived about five minutes later. After talking with the Subway employee and getting a description of the robber, the officer issued a radio alert for officers to be on the lookout for a suspect matching the robber's description.

---

[1] The jury acquitted Fields of a separate count of armed robbery.

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

The evidence also showed that, shortly after the Subway robbery, a man went into a nearby Famous Footwear shoe store. According to a store employee, the man, whom she later identified as Fields, came into the store twice and left both times without buying anything. Fields then came back into the store a third time, tried on a pair of shoes, and approached the employee while she was standing near the cash register. The employee testified that Fields pulled up his shirt, showed her a gun that was lodged in his waistband, and said, "Give me all the money out of the cash register." The employee ran to the back of the store, yelling and screaming, and alerted a fellow employee, who called the police. The employees saw Fields walk out of the store "laughing and smiling," and watched him get into a white Jeep Cherokee.

After responding to the 911 call from Famous Footwear, a police officer issued a radio alert to be on the lookout for a white Jeep Cherokee being driven by a black male wearing a blue-and-white striped shirt. Shortly thereafter, an officer spotted a vehicle matching that description that was stopped in traffic on Highway 34, almost directly in front of the Famous Footwear store. The officer turned on his blue lights and executed a traffic stop.[3] Another police officer arrived to assist and found a paintball gun on top of some clothing right behind the driver's seat of Fields' car. The officers arrested Fields and took him to the sheriff's department. During a videotaped interview with investigators, Fields admitted that he had gone to both crime locations that day and had the gun with him at both places. He also admitted that, while he was at the Subway shop, he took a sandwich off of the counter without paying for it after the employee got scared and ran to the back of the shop. The State played a redacted copy of the videotaped interview for the jury at trial.[4]

Fields was indicted for armed robbery of the Subway shop and attempted armed robbery of the Famous Footwear store. A jury acquitted Fields of armed robbery and convicted him of attempted armed robbery.

1. Fields contends the trial court erred in denying his motion to sever the crimes for trial. Prior to trial, Fields argued that the

---

[3] On appeal, Fields does not challenge the legality of the stop or his arrest, nor does he contend the police officers executed an illegal search of his car.

[4] The State redacted the tape before it was played in order to remove statements made by Fields about his prior criminal record. Fields did not object to the State playing the tape for the jury at trial. Although neither the tape nor a transcript of the tape is in the record on appeal, the record shows that Fields' counsel conceded at trial that Fields had made the taped admissions that are recounted in the facts above, and Fields does not challenge the substance, voluntariness, or admissibility of his taped statements on appeal.

offenses should be severed because they happened at different locations and involved different victims, and because allowing evidence of the attempted armed robbery would prejudice the trial as to the armed robbery count. The trial court denied the motion to sever, finding that the crimes could be tried together because they were committed in close proximity in time and place and involved a similar modus operandi.

(a) On appeal, Fields contends the crimes were not similar enough to be tried together. In the alternative, he argues that he had an absolute right to severance because the crimes were joined solely because they were similar in nature.

> The absolute right to severance exists only where offenses have been joined solely because they are of the same or similar character. Where, however, as here, joinder is based on a series of acts connected together, severance lies within the sound discretion of the trial court. The trial court should sever the offenses if severance is appropriate to promote a fair determination of guilt or innocence as to each offense. Whether evidence of one offense would be admissible in a trial of the other if severance is granted is a relevant consideration.

(Citations omitted.) *Bland v. State*, 264 Ga. 610, 611 (2) (449 SE2d 116) (1994).

Contrary to Fields' arguments on appeal, the record shows that the crimes were similar, in that Fields committed both the armed robbery and attempted armed robbery by approaching female store employees and showing them a gun. Moreover, the record shows the crimes were not tried together solely because they were similar. Instead, in addition to involving the same type of crime, the crimes were also part of a series of connected acts, committed within a short period of time, in the same area, and with the same weapon. Therefore, under the circumstances presented, Fields was not automatically entitled to a severance. *Bland v. State*, 264 Ga. at 611. We find the trial court did not abuse its discretion in denying Fields' motion to sever. Id.

(b) Fields also argues that the trial court used the wrong legal standard when it denied his motion to sever. According to Fields, the trial court should have applied the rule enunciated in *Stewart v. State*, 277 Ga. 138, 139 (587 SE2d 602) (2003),[5] which was decided over two years before Fields' trial.

---

[5] In *Stewart*, the Supreme Court of Georgia held that, when deciding whether to sever

The record shows, however, that neither Fields nor his attorney raised this objection before or during trial, nor did they raise it in the motion for new trial. Therefore, this issue has not been preserved for appellate review. *Smiley v. State*, 252 Ga. App. 235 (1) (555 SE2d 887) (2001); cf. *Green v. State*, 279 Ga. 455, 456-457 (2) (614 SE2d 751) (2005) (in his motion for new trial, the defendant raised the issue of the trial court's failure to apply the proper legal standard when denying his motion to sever; therefore, the error was preserved for appellate review, and the appellate court was authorized to apply the proper legal standard under the "pipeline" rule).

2. Fields contends the trial court erred in allowing the Dunkin' Donuts manager to testify about the statements made by the Subway employee immediately after she ran into his store. The trial court admitted the testimony after finding it was part of the res gestae of the crime.

Under OCGA § 24-3-3, "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."

> Excited utterances are included in the codified res gestae exception. In order to constitute an excited utterance, an event precipitating the statement must have been sufficiently startling to render inoperative the declarant's normal reflective thought processes, and the declarant's statement must have been the result of a spontaneous reaction, and not the result of reflective thought.

(Citation and punctuation omitted.) *Cox v. State*, 274 Ga. 204, 206 (3) (553 SE2d 152) (2001). "Whether a declaration is admissible as part of the res gestae is left to the sound discretion of the trial court, considering the time, circumstances, and statements in question. So long as the statement is relevant and made without premeditation, the trial court may admit the evidence." (Citation and punctuation omitted.) *Roby v. State*, 273 Ga. App. 308, 309 (1) (a) (614 SE2d 916) (2005). The evidence supports a finding that the Subway employee made her statements to the manager while she was hysterical because Fields had just attempted to rob her at gunpoint. Therefore, the statements were "free from all suspicion of device or afterthought." (Citation and punctuation omitted.) *Cox v. State*, 274 Ga. at

---

charges that have not been joined solely because they are of the same or similar character, the court must consider whether severance is necessary to ensure that the trier of fact is able to make a fair and intelligent determination of the defendant's guilt or innocence as to each charge. 277 Ga. at 140.

206 (3). The statements were part of the Subway employee's "spontaneous utterance made in reaction to the circumstances, not to police questioning." *Roby v. State*, 273 Ga. App. at 309 (1) (a). Accordingly, the court did not abuse its discretion in admitting the Dunkin' Donuts manager's testimony about the Subway employee's spontaneous statements to him as part of the res gestae. *Cox v. State*, 274 Ga. at 206 (3).

Fields argues, however, that admission of the manager's testimony violated the Confrontation Clause, citing to *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).[6] *Crawford*, however, does not apply to the testimony at issue.

> *Crawford* held that testimonial out-of-court statements in criminal trials were admissible under the Confrontation Clause subject to the unavailability of the declarant and a prior opportunity of the defendant to cross-examine the declarant. Since *Crawford*, our Courts have interpreted "testimonial" statements to include those statements made to police officers investigating a crime.

(Citations and punctuation omitted.) *Kimbrell v. State*, 280 Ga. App. 867, 868 (2) (635 SE2d 237) (2006). In this case, the statements were part of the res gestae of the crime. More importantly, they were not made to a police officer during a subsequent investigation of the crime, nor were they made to an officer or 911 operator for the purpose of proving a fact regarding some past event. Accordingly, the statements at issue here were not testimonial in nature, and *Crawford* does not apply to them. Id.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED JANUARY 5, 2007.

*Ricardo G. Samper, Gerald P. Word*, for appellant.
*Peter J. Skandalakis, District Attorney, Bruce P. Dutcher, Assistant District Attorney*, for appellee.

---

[6] In his appellate brief, Fields argues at length that the admission of certain other evidence would have violated the Confrontation Clause. Specifically, Fields argues that the police officer's testimony regarding what the Subway employee told him shortly after the armed robbery was inadmissible under *Crawford*, while a tape of the Dunkin' Donuts manager's 911 call was inadmissible under *Pitts v. State*, 280 Ga. 288 (627 SE2d 17) (2006). Pretermitting whether this evidence was inadmissible, however, the record shows that the State did not introduce either piece of evidence at trial. Accordingly, Fields' argument is moot.